**FITAPELLI & SCHAFFER, LLP**
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAMELA BRAVO, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>PALM WEST CORP., JUST ONE MORE RESTAURANT CORP., PALM RESTAURANT INC., PALM NY DOWNTOWN, LLC, PALM MANAGEMENT CORP., "XYZ CORP." d/b/a THE PALM BAR & GRILL, WALTER GANZI, JR., and BRUCE BOZZI, SR.,<br><br>Defendants. | No. 14 Civ. 9193 (SN) |

DECLARATION OF BRIAN S. SCHAFFER
IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT, CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS,
APPOINTMENT OF PLAINTIFF'S COUNSEL AS CLASS COUNSEL, AND
APPROVAL OF PLAINTIFF'S PROPOSED NOTICE OF SETTLEMENT
<u>AND CLASS ACTION SETTLEMENT PROCEDURE</u>

I, Brian S. Schaffer, declare as follows:

1. I am a partner at the firm of Fitapelli & Schaffer, LLP ("F&S") in New York, New York, Plaintiff's Counsel herein. F&S is a well respected and nationally recognized, seven attorney employment litigation firm based in New York City that represents plaintiffs in a wide variety of employment matters, including individual and class action litigation involving wage and hour, discrimination, and harassment claims, as well as contract and severance negotiations.

2. I am one of the lawyers primarily responsible for prosecuting Plaintiff's claims.

3. I make these statements based on personal knowledge and would so testify if called as a witness at trial.

## PROCEDURAL HISTORY

### Overview of Investigation and Commencement of the Action

4. Before initiating the instant action, F&S conducted thorough investigations, which included research into the Palm Restaurants and its owners, factual investigation and legal research as to the underlying merits of the claims and possible defenses, the sending of FOIL and FOIA requests to the New York State Dept. of Labor and the United States Dept. of Labor, the proper measure of damages, and the likelihood of collective and class action certification. During this initial research, F&S discovered a prior lawsuit, *Davis et al v. Palm Management Corporation et al.*, No. 09 Civ. 07348 (RMB)(AJP), ECF No. 1 (S.D.N.Y. Aug. 19, 2008), which alleged claims similar to the instant matter. As such, F&S reviewed all documents filed on the docket, including, but not limited to, the complaint, the defendants' answer, the Rule 7.1 Corporate Disclosure statement, the motion for preliminary approval, the settlement agreement, the motion for final approval, and the plaintiffs' attorneys' declaration in support of final approval. Upon review, F&S learned that the *Davis* settlement only covered a class of employees for a period up until April 7, 2009, with a release date of January 12, 2010. As a result of their due diligence, F&S determined that they were not prevented from filing the instant action.

5. Furthermore, F&S conducted an in-depth interview with Pamela Bravo ("Bravo") who worked at the Palm West restaurant - located at 250 West 50th Street, New York, New York 10019 ("Palm West Location"). This interview helped F&S determine the hours servers, server assistants, back waiters, bussers, runners, coat checkers, bartenders, and barbacks (collectively, "Tipped Workers") were working, the wages they were paid, the nature of their duties, Defendants'

tip pooling practices, and other relevant information.  In addition, F&S received and reviewed documents from Bravo including, but not limited to, paystubs, sales receipts, and a server manual.

6. On November 19, 2014, Bravo commenced a class and collective action on behalf of herself and all other similarly situated Tipped Workers employed or previously employed by Palm West Corp., Just One More Restaurant Corp., Palm Restaurant Inc., Palm NY Downtown, LLC, Palm Management Corp., Walter Ganzi, Jr., and Bruce Bozzi, Sr. (collectively, the "Palm Restaurants" or "Defendants") in New York.  Specifically, Bravo asserted that Defendants violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") provisions regarding: (1) minimum wage; (2) overtime compensation; (3) spread-of-hours pay; (4) tips and/or gratuities; (5) uniform-related expenses; (6) unlawful deductions from wages; (7) wage notices; and (8) wage statements.  With respect to the minimum wage and overtime claims, Bravo alleged that Defendants failed to satisfy the requirements by which they could avail themselves of a tip credit under the FLSA and NYLL.  In regards to the tip misappropriation claim, Bravo alleged that Defendants impermissibly allocated a portion of the mandatory tip pool at the Palm West Location to glass polishers – employees who had little to no interaction with customers. *See* ECF No. 1.

7. Prior to Defendants filing an Answer, on December 23, 2014, Defendants filed a letter seeking a pre-motion conference for an anticipated motion to dismiss this lawsuit due to alleged improper service. *See* ECF No. 5.  On December 29, 2014, Plaintiff filed a letter in response explaining why service was proper. *See* ECF No. 6.  Additionally, Plaintiff re-served the corporate Defendants through the New York Department of State and served the individual Defendants personally in the state of Florida. *See* ECF Nos. 8, 10-14, 16.  On January 15, 2015, the parties participated in a telephone status conference call with the Honorable Judge Andrew L.

Carter, Jr. to discuss Defendants' anticipated motion to dismiss this action for insufficient service of process. *See* ECF No. 9.  Due to Plaintiff's above-mentioned actions, Defendants did not file a motion to dismiss, and agreed to file their Answer by February 6, 2015. *See* ECF No. 15. .

8. Before Defendants' Answer was filed, two additional individuals joined the action by filing FLSA Consent forms with the Court. *See* ECF Nos. 7, 17.  F&S conducted in-depth interviews with these two individuals regarding the claims asserted in the Complaint, and received and reviewed their documents.

9. On February 3, 2015, the parties submitted a stipulation to toll the statute of limitations period under the FLSA and to stay all activity in this action in order to pursue a potential resolution of this matter. *See* ECF No. 19.

10. On February 6, 2015, Defendants filed their Answer to Plaintiff's Class Action Complaint, denying all material allegations and raising a myriad of defenses which would be hotly contested as the litigation moved forward. *See* ECF No. 18.  Those defenses would be argued by Defendants throughout the negotiation process, and included, but were not limited to:  Plaintiff's failure to state a claim upon which relief may be granted; Plaintiff's lack of standing; Plaintiff was properly paid for all hours worked; Plaintiff was properly notified of the tip credit provisions under the FLSA and NYLL; Defendants maintained a legal tip sharing arrangement in accordance with the FLSA and NYLL; Plaintiff's wages were not subject to any unlawful deductions; Plaintiff's claims were  barred in whole or in part by the *Davis v. Palm Mgmt Corp.* settlement and the statute of limitations; Defendants did not act willfully; Defendants acted in good faith; the individual Defendants were not Plaintiff's "employers" as defined in the FLSA and NYLL; Plaintiff's alleged damages were not caused by Defendants' uniform policies and/or practices; the action will not meet requirements for class and collective certification; Plaintiff Bravo was not

similarly situated to the class; the Court should not exercise supplemental jurisdiction over the state law claims; and Plaintiff and the putative class's claims should be barred by virtue of their failure to exercise reasonable diligence to mitigate their alleged damages. *See Id.*

11. Shortly thereafter the parties began discussing a possible class-wide resolution of the matter. On March 26, 2015, the Court scheduled a Settlement Conference before Magistrate Judge Netburn for June 22, 2015. *See* ECF No. 22.

**Pre-Settlement Discovery and Narrowing of the Issues**

12. The parties participated in numerous phone calls and sent countless e-mails back and forth regarding the data Plaintiffs required to evaluate the strengths and weaknesses of their claims, and begin calculating damages. The parties also negotiated and executed a confidentiality agreement for the purposes of exchanging information to further their settlement discussions. Thereafter, Defendants began producing relevant documentation.

13. Specifically, Defendants produced over 2,500 pages of documents, including, but not limited to, payroll registers, time records, private event contracts, tip sheets, employee personnel files for Bravo and a number of the opt-in Plaintiffs (collectively, "Plaintiffs"), and employee handbooks. Additionally, Defendants produced spreadsheets for each of the five restaurants representing a sampling of time records and full payroll records for the putative class members. The payroll records showed each putative class members' date of hire, date of termination, regular hourly rate paid, overtime rate paid, the number of hours worked for each pay period, and job title. The chart below summarizes the volume of data contained in each spreadsheet.

| RESTAURANT | TIME RECORDS | PAYROLL RECORDS | TOTAL DATA PRODUCED PER RESTAURANT |
|---|---|---|---|
| Palm West | 15,556 | 16,194 | 31,750 |
| Palm Tribeca | 11,706 | 12,532 | 24,238 |
| Palm One | 7,633 | 8,011 | 15,644 |
| Palm Too | 9,768 | 9,207 | 18,975 |
| Palm – Huntting Inn | 6,971 | 8,118 | 15,089 |
| **TOTALS** | **51,634** | **54,062** | **105,696** |

*Numbers reflect the amount of rows of data contained in each spreadsheet

14. Also, over a thousand documents were provided to F&S by Plaintiffs. These documents included, but were not limited to, paystubs, tip sheets, employee handbooks, server manuals, menus, training materials, cash-out receipts, W-2 forms, and wage notices. Working with Plaintiffs, F&S reviewed and analyzed the documents produced by Defendants in order to narrow the issues raised in the Complaint and evaluate the strengths and weaknesses of Plaintiffs' claims.

15. After evaluating all documents and speaking with Bravo and each of the then 18 individuals who opted into this lawsuit[1] regarding Defendants' time keeping practices, compensation polices and corporate structure, F&S engaged in an intensive process to determine the damages owed to Plaintiffs and putative class members. First, F&S created formulas in each of the above-mentioned spreadsheets to calculate the total regular hours worked, the total overtime hours worked, the total 10+ hour days worked, and the total weeks worked by each Plaintiff and putative class member. Next, F&S combined these results into one master spreadsheet in order to calculate each claims' monetary value. The final damages spreadsheet

---

[1] Prior to the Settlement Conference, 18 individuals opted into this lawsuit. *See* ECF Nos. 7, 17, 21, 23, 24, 26-31, 34-38, 40, 41. To date, a total of 22 individuals have opted into this lawsuit. *See* ECF Nos. 42, 45, 47, 48.

was broken down by each location, and showed the total weeks worked, the total regular hours worked, and the total amount of overtime hours worked for each year. F&S then calculated the total amount of regular wages, overtime wages, spread-of-hours pay, tips, unlawful deductions, uniform-related expenses owed by each restaurant per year. Each year was then divided into separate time periods to account for the NYLL and FLSA statute of limitation periods, changes in the minimum wage and overtime rates, the change in NYLL liquidated damages, and the record keeping violations under NYLL § 195. Upon completion, F&S checked and then re-checked the damages spreadsheet for accuracy.

**The Parties' Settlement Conference**

16. In order to prepare for the settlement conference, F&S continued to speak with Plaintiffs regarding their hours worked and wages received, the Palm Restaurants' practices regarding customer tips, uniforms and meal deductions, and the uniform operations of the Palm Restaurants. F&S also digested and analyzed the documents produced by Plaintiffs and Defendants, and conducted extensive research regarding Plaintiffs' claims and Defendants' ability to fund a settlement and/or satisfy a judgment. As a result of this work, F&S was able to prepare a comprehensive class-wide damages analysis, and evaluate the strengths and weaknesses of the class's claims.

17. Prior to the settlement conference, the parties submitted detailed *ex parte* settlement statements to Magistrate Judge Netburn, and Plaintiffs provided Defendants with their initial demand based on the class-wide damages that were calculated. Plaintiffs' settlement statement was 10 pages long and contained detailed analysis using the most recent case law regarding the laws and facts pertaining to each claim. The following claims were outlined in detail in Plaintiffs' settlement statement:

- Minimum wage violations: discussing how Defendants failed to provide adequate notice of the tip credit provisions of the FLSA and NYLL to Tipped Workers (distinguishing between the pre- and post-2011 requirements under the NYLL), and were unable to avail themselves of the tip credit under the FLSA and NYLL because they distributed tips to employees who are not eligible to receive tips under the FLSA or NYLL;

- Overtime pay violations: discussing how Defendants' failure to compensate Plaintiffs at the appropriate minimum wage caused Defendants' failure to compensate Plaintiffs at the appropriate overtime rate, and that Plaintiffs were required to work approximately 30 minutes "off-the-clock," which lead to them not being compensated for additional overtime hours worked;

- Spread-of-hours pay violations: discussing how Plaintiffs consistently worked ten plus hour days and were not paid spread-of-hours pay as required under the NYLL;

- Tip misappropriation: discussing how dishwashers and glass polishers are tip ineligible positions under the NYLL;

- Uniform related expenses violations: discussing how Defendants failed to reimburse Plaintiffs for the maintenance of their uniforms at the appropriate statutory rate under the NYLL, and failed to reimburse them for the costs of buying additional uniforms;

- Unlawful deductions: discussing how Defendants unlawfully charged Plaintiffs a flat rate of $48 per month for meals regardless of the amount of shifts they worked or meals actually taken;

- Record keeping violations: discussing how Defendants failed to provide accurate annual wage notices and accurate statements of wages under NYLL § 195;

- FLSA statute of limitations: discussing how a three year statute of limitations was appropriate under the FLSA because Defendants' actions were "willful;"

- Liquidated damages: discussing how Plaintiffs were entitled to liquidated damages under both the FLSA and the NYLL as they serve different purposes; and

- Attorneys' fees and costs: discussing how as a prevailing party, Plaintiffs would be entitled to reasonable attorneys' fees and costs.

18. The parties appeared for a Settlement Conference on June 22, 2015 with Magistrate Judge Netburn that lasted the majority of the day. *See* ECF No. 22. At the settlement conference, Defendants strenuously argued, among other things, that Class Members were properly notified of the tip credit and thus were properly compensated for all minimum wage and overtime wages. Defendants also argued that Plaintiffs would not be seen as poorly paid workers because they received a substantial amount of tips, and thus, would not be viewed in a sympathetic light. Furthermore, Defendants vigorously argued that all required notices were properly given, no employees were required to or in fact worked off the clock, all individuals who participated in the tip pools at the Palm Restaurants were tip eligible, that Defendants did not unlawfully deduct money for meals, that the required uniforms met the "wash and wear" exception, and that any violations of the FLSA and NYLL were not willful or in bad faith.

19. After several hours of highly contested negotiations, the parties were ultimately able to agree in principle to a class-wide settlement of $2,750,000.00. The parties then consented to jurisdiction before Judge Netburn for all purposes. *See* ECF No. 44.

20. Following the settlement conference, the parties participated in a telephone conference with Magistrate Judge Netburn on July 27, 2015. *See* ECF No. 46. Thereafter, the parties continued to negotiate the terms of the settlement. Among the hotly contested issues in drafting the settlement agreement were the scope of the release, the time period covered by the release, confidentiality and non-disparagement, the confession of judgment, and the personal financial statement in the event of breach. On September 10, 2015, all parties fully executed the final Settlement Agreement and Release ("Settlement Agreement").

21. A fully executed copy of the Settlement Agreement is attached hereto as **Exhibit A**. The proposed Notice of Class Action Lawsuit Settlement and Fairness Hearing ("Proposed Class

Notice") that will be mailed to Class Members is attached hereto as **Exhibit B**.

## SETTLEMENT AGREEMENT

22. The $2,750,000.00 settlement amount (the "Settlement Fund") is a compromise figure. In reaching the settlement, F&S took into account the risks of establishing liability and class certification, and considered the time, delay, and financial repercussions in the event of trial and appeal by Defendants. Although Plaintiffs believe their claims have merit, they recognize the legal, factual, and procedural obstacles to recovery, as Defendants have and will continue to vigorously contest Plaintiffs' claims and their ability to satisfy a judgment if the action does not settle. In light of the strengths and weaknesses of the case, F&S believes the settlement easily falls within the range of reasonableness because it achieves a significant benefit for Plaintiffs and Class Members in the face of significant obstacles.

23. The settlement negotiations were at all times hard fought and at arm's-length, and have produced a result that F&S believes to be in the best interests of the class in light of the costs and risks of continued litigation. Moreover, in our estimation, and based on the data provided by Plaintiffs and Defendants, the settlement represents a significant percentage of the recovery that Plaintiffs and Class Members would have achieved had they prevailed on all of their claims and survived an appeal, and a substantial portion of what Defendants would be able to pay if faced with a judgment.

24. The Settlement Agreement defines the proposed settlement "Class Members" as "all persons who work or have worked as Tipped Workers at the five Palm restaurants in New York State between November 19, 2008 and August 1, 2015, *excluding* those Tipped Workers who participated in the settlement in *Mark Hunter Davis and Jorelle Aronovich, on behalf of themselves and others similarly situated v. Palm Management Corporation and Palm Restaurant, Inc. d/b/a Palm West Restaurant, Palm One Restaurant, and Palm Too Restaurant*,

No. 09 Civ. 07348 (RMB)(AJP), the Southern District of New York, and whose employment terminated on or before January 12, 2010." **Ex. A**, Settlement Agreement ¶ 1.4.

25. There are approximately 486 Class Members.

### **ALLOCATION FORMULA**

26. The Settlement Fund shall be distributed to Qualified Class Members according to the following formula:

> (a) Each Class Member shall receive one (1) point for every week worked prior to April 9, 2011;
>
> (b) Each Class Member shall receive two (2) points for every week worked between April 9, 2011 and August 1, 2015.  This extra allocation is due to the Annual Wage Notice and Wage Statement Claims that began as of April 9, 2011, when the New York Wage Theft Prevention Act went into law;
>
> (c) Each Class Member who worked at Palm West Location will receive one (1) additional point for every week worked prior to April 9, 2011, and two (2) additional points for every week worked between April 9, 2011 and August 1, 2015.  This extra allocation is due to allegations of tip misappropriation to dishwashers and glass polishers, and payment of $48.00 per month by Class Members for meals at the Palm West Location;
>
> (d) Each Class Member who filed an FLSA opt-in form to join this lawsuit shall receive one (1) point for each week worked during the FLSA statute of limitations period prior to August 1, 2015.  This extra allocation is for Class Members who affirmatively joined the case prior to settlement; and
>
> (e) To calculate each Qualified Class Member's proportionate share:
>
>> a. The Net Settlement Fund, as defined in the Settlement Agreement, will be divided by the aggregate number of points accrued by all of the Class Members who worked at the Palm Restaurants from November 19, 2008 through August 1, 2015 ("Point Value"); and
>>
>> b. Each Class Member's total points will be multiplied by the Point Value to determine his or her Individual Settlement Amount ("Settlement Award").

*Id.* ¶ 3.5(B).

**CLAIMS ADMINISTRATION**

27. Plaintiffs will retain Angeion Group to administer the settlement process. Among other responsibilities, the claims administrator shall be responsible for: mailing the Class Notice, calculating Class Members' share of the Net Settlement Fund, and cutting and mailing checks to Qualified Class Members as provided in the Settlement Agreement. *Id*. ¶ 2.1.

28. The claims administrator's fees shall be paid from the Settlement Payment. *Id*.

**MY BACKGROUND AND EXPERIENCE**

29. I received a Juris Doctor degree (dean's list) from New York Law School in 2003. I was admitted to the bar of the State of New York in 2004, and am also admitted to the bars of the Second Circuit Court of Appeals and the United States District Courts for the Eastern and Southern Districts of New York. I am a member in good standing of each of these bars. I became a partner of F&S in January 2008. Prior to starting F&S, I was employed by The Law Firm of Louis Ginsberg, P.C., a firm that specializes in the representation of individuals in employment law. Thereafter, I was employed by two civil litigation firms in Manhattan: Freiberg & Peck, LLP and Weiner, Millo & Morgan, LLC. Since starting F&S in 2008, I have exclusively represented plaintiffs in employment litigation and other employee rights matters. I am a member of the National Employment Lawyers Association ("NELA") and NELA's New York Chapter. In addition to being a member of NELA, I have also served as a panelist at CLE presentations for wage and hour issues. I was recently selected to be a contributing editor for the American Bar Association's 2015 Treatise on the Fair Labor Standards Act. I have frequently been contacted by the media and the press to discuss current employment law related issues. In connection with my work, I regularly read Law 360, employment law blogs, and all wage and hour decisions in the Second Circuit.

30. F&S has significant experience prosecuting wage and hour class and collective

actions such as this one. I have prosecuted wage and hour cases that have been certified as class actions with F&S being appointed class counsel, including: *Gonqueh v. Leros Point to Point, Inc.*, No. 14-CV-5883 (GHW), 2015 U.S. Dist. LEXIS 117166, at *7 (S.D.N.Y. Sept. 2, 2015); *Lopez v. Dinex Group, LLC*, No. 155706/2014, 2015 N.Y. Misc. LEXIS 2192, at *9 (N.Y. Sup. Ct. New York County, June 23, 2015); *Milton v. Bells Nurses Registry & Employment Agency, Inc.*, No. 502303/2015, NYSCECF No. 12 (N.Y. Sup. Ct. Kings County, May 13, 2015); *Carpenter v. Paige Hospitality Group, LLC, et al.*, No. 13 Civ. 4009 (GBD), 2015 U.S. Dist. LEXIS 82771 (S.D.N.Y. June 2, 2015); *Hamadou v. Hess Corporation, et al.*, No. 12 Civ. 250 (JLC), 2015 WL 3824230 (S.D.N.Y. June 18, 2015); *Fernandez v. Legends Hospitality, LLC*, No. 152208/2014, 2015 N.Y. Misc. LEXIS 2193 (N.Y. Sup. Ct. New York County, June 20, 2015); *Espinoza v. Wanrong Trading Corp.*, No. 13 Civ. 1727 (FB), ECF No. 33 (E.D.N.Y. December 23, 2014); *Flynn v. N.Y. Dolls Gentlemen's Club*, No. 13 Civ. 6530 (PKC)(RLE), 2014 WL 4980380 (S.D.N.Y. Apr. 28, 2015); *Flores v. One Hanover, LLC*, No. 13 Civ. 5184 (AJP), ECF No. 40 (S.D.N.Y. June 9, 2014); *Bonilla v. A-1 First Class Viking Moving & Storage, Inc.*, No. 151136/2013 (EAR), NYSCEF No. 79 (N.Y. Sup. Ct. May 20, 2014); *Simsek v. New York State Catholic Health Plan, Inc.*, No. 11 Civ. 5393 (FB)(JMA), 2014 U.S. Dist. LEXIS 22979 (E.D.N.Y. Feb. 14, 2014); *Diombera v. The Riese Organization, Inc.*, No. 12 Civ. 8477 (RJS)(HP), ECF No. 73 (S.D.N.Y. Oct. 21, 2013); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216 (WHP)(RLE), 2013 WL 4734818 (S.D.N.Y. Sept. 3, 2013); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013); *Tiro v. Pub. House Investments, LLC*, No. 11 Civ. 7679 (CM), 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013); *Ryan v. Volume Services America, Inc.*, No. 652970/2012 (MLS), 2012 N.Y. Misc. LEXIS 932 (N.Y. Sup. Ct. Mar. 7, 2013); *Chang v. BD Stanhope, LLC*, No. 10 Civ. 8577 (TPG), ECF No. 48 (S.D.N.Y. Nov. 15, 2012); *Girault v.

*Supersol 661 Amsterdam, LLC*, No. 11 Civ. 6835 (PAE), 2012 WL 4748101 (S.D.N.Y. Oct. 4, 2012); *Lovaglio v. W & E Hospitality Inc.*, No. 10 Civ. 7351 (LLS), 2012 WL 2775019 (S.D.N.Y. July 6, 2012); *Matheson v. The Glazier Group, Inc.*, No. 09 Civ. 4212 (DAB), 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011); *O'Dell. v. AMF Bowling Centers, Inc.*, No. 09 Civ. 759 (DLC), 2009 WL 6583142 (S.D.N.Y. Sept. 18, 2009).

31.     I have prosecuted wage and hour cases that have been certified as collective actions, including: *Schaefer v. M&T Bank Corp.*, No. 14 Civ. 6622 (PGG), 2015 WL 4979211 (S.D.N.Y. Aug. 19, 2015); *Guzman v. Three Amigos SJL Inc.*, No. 14 Civ. 10120 (GBD), 2015 WL 4597427, at *1 (S.D.N.Y. July 30, 2015); *Flood v. Carlson Restaurants Inc.*, No. 14 Civ. 2740 (AT), 2015 WL 260436 (S.D.N.Y. Jan. 20, 2015); *Gomez v. All City Remodeling, Inc.*, No. 14 Civ. 2966 (GHW), ECF No. 30 (S.D.N.Y. Oct. 17, 2014); *Juarez v. 449 Restaurant Inc.*, No. 13 Civ. 6977 (AJN), 2014 WL 3361765 (S.D.N.Y. July 2, 2014); *Espinoza v. Sky City Apartments, LLC*, No. 14 Civ. 2368 (ER) Docket No. 10 (S.D.N.Y. July 1, 2014); *Carpenter v. Paige Hospitality Group, LLC,* No. 13 Civ. 4009 (GBD), Docket No. 35 (S.D.N.Y. Nov. 11, 2013); *Chhab v. Darden Restaurants, Inc.*, No. 11 Civ. 8345 (NRB), 2013 WL 5308004 (S.D.N.Y. Sept. 20, 2013); *Jones v. Sho Riki, Inc.*, No. 13 Civ. 2837 (TPG), Docket No. 11 (S.D.N.Y. July 18, 2013); *Scott v. Chipotle Mexican Grill, Inc.*, No. 12 Civ. 8333 (ALC)(SN), Order (S.D.N.Y. June 20, 2013); *Ritz v. Mike Rory Corp.*, No. 12 Civ. 367 (JBW)(RML), Order (E.D.N.Y. Apr. 17, 2013); *Novozhilova v. God Save The King, LLC*, No. 12 Civ. 7572 (RA), Docket No. 16 (S.D.N.Y. Dec. 14, 2012); *Roman v. The Dinex Group, LLC*, No. 11 Civ. 6156 (AKH), Docket No. 53 (S.D.N.Y. Nov. 28, 2012); *Sorman v. Aurora Catering, Inc.*, No. 12 Civ. 3226 (KBF), Docket No. 23 (S.D.N.Y. Aug. 28, 2012); *Hidalgo v. New York State Catholic Health Plan, Inc.*, No. 11 Civ. 4673 (FB)(JMA), Docket No. 39 (E.D.N.Y. June 20, 2012); *Salomon v. Adderley Indus., Inc.*, No. 11 Civ. 6043 (PAC), 2012

WL 716197 (S.D.N.Y. Mar. 6, 2012); *Karic v. The Major Automotive Companies, Inc.*, 799 F. Supp. 2d 219 (E.D.N.Y. 2011); *Carver v. CFR2, LLC*, No. 11 Civ. 03738 (S.D.N.Y. 2011); *Rivera v. Morales*, No. 11 Civ. 02567 (S.D.N.Y. 2011); *Wulff v. 17th Street Entertainment II LLC*, No. 10 Civ. 2559 (CM)(JCF), Docket No. 17 (S.D.N.Y. May 27, 2010); *Tezuka v. E. Ochi, Inc.*, No. 09 Civ. 10140 (S.D.N.Y. 2009); *Levine v. Merrill Lynch, Pierce, Fenner & Smith Incorporated*, No. 09 Civ. 304 (S.D.N.Y. 2009).

## EXHIBITS

32. Attached as **Exhibit A** is a true and correct copy of the parties' Settlement Agreement, which was fully executed by the parties on September 10, 2015.

33. Attached as **Exhibit B** is the Proposed Class Notice.

34. Attached as **Exhibit C** is a true and correct copy of Plaintiff's proposed Order granting Plaintiff's Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiff's Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure.

\*  \*  \*

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 10th day of September, 2015
New York, New York

        /s/ Brian S. Schaffer
        Brian S. Schaffer

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Nicholas P. Melito
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

*Attorneys for Plaintiff and*
*the Putative Class*