# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **PAMELA BRAVO, on behalf of herself and all others similarly situated,**<br><br>             **Plaintiff,**<br><br>    **-against-**<br><br>**PALM WEST CORP., JUST ONE MORE RESTAURANT CORP., PALM RESTAURANT INC., PALM NY DOWNTOWN, LLC, PALM MANAGEMENT CORP., "XYZ CORP." d/b/a THE PALM BAR & GRILL, WALTER GANZI, JR., and BRUCE BOZZI, SR.,**<br><br>             **Defendants.** | **No. 14 Civ. 9193 (SN)** |

<br><br>

## MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFF'S MOTION FOR
## <u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Nicholas P. Melito
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

*Attorneys for Plaintiff and
the Class*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.      THE PROPOSED RULE 23 SETTLEMENT SHOULD BE APPROVED ...................... 2

      A.    The Proposed Settlement Class Should Be Certified. ............................................. 2

      B.    The Proposed Settlement Is Fair, Reasonable And Adequate, And Should Be Approved. ....................................................................................................... 3

            1.    The Settlement Is Procedurally Fair And Should Be Approved. ..................... 3

            2.    The Settlement Is Substantively Fair And Meets The *Grinnell* Standards For Class Action Settlement Approval. ..................................................... 4

                  a)   *Litigation Through Trial Would Be Complex, Costly, And Long (Grinnell Factor 1).* ............................................................................. 5

                  b)   *The Reaction Of The Class Has Been Positive (Grinnell Factor 2).* ............ 6

                  c)   *Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (Grinnell Factor 3).* ..................................... 6

                  d)   *Plaintiffs Would Face Real Risks If The Case Proceeded (Grinnell Factors 4 And 5).* ...................................................................................... 7

                  e)   *Establishing A Class And Maintaining It Through Trial Would Not Be Simple (Grinnell Factor 6).* ............................................................... 8

                  f)   *Defendants' Ability To Withstand A Greater Judgment Is Not Assured (Grinnell Factor 7).* ................................................................... 8

                  g)   *The Settlement Fund Is Substantial In Light Of The Possible Recovery And The Attendant Risks Of Litigation (Grinnell Factors 8 and 9).* ..................... 9

II.    THE COURT SHOULD ISSUE FINAL APPROVAL OF THE FLSA SETTLEMENT ................................................................................. 10

III.   CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED .......................................................................................... 11

      A.    The Percentage Method Is The Preferred Method For Awarding Attorneys' Fees In Common Fund Cases In The Second Circuit. ..................................................... 11

      B.    The *Goldberger* Factors Support An Award Of One-Third Of The Common Fund. ........................................................................................... 14

            1.    Class Counsel's Time And Labor. ....................................................... 15

            2.    The Litigation's Magnitude And Complexity. ....................................... 15

3.   The Risks Of Litigation. .................................................................. 18

4.   Quality Of The Representation. ...................................................... 21

5.   The Fee Is Reasonable In Relation To The Settlement.................................... 22

6.   Public Policy Considerations. ...................................................... 22

C.   <u>The Lodestar Cross Check Further Supports An Award To Class Counsel Of One-Third Of The Settlement Fund.</u> ...................................................... 24

D.   <u>Class Counsel Is Entitled To Reimbursement Of Their Litigation Expenses.</u>......... 26

IV.   A SERVICE AWARD SHOULD BE AWARDED TO PLAINTIFF ............................. 27

<u>CONCLUSION</u>................................................................................. 29

# TABLE OF AUTHORITIES

**Cases**................................................................................................**Page Number**

*A.H. Phillips v. Walling*, 324 U.S. 490 (1945)............................................................. 23

*Amador v. Morgan Stanley & Co., LLC*,
    No. 11 Civ. 4326 (RJS), Hr'g Tr. (S.D.N.Y. Dec. 19, 2014) ............................ 18, 23

*Asare v. Change Grp. Of N.Y., Inc.*,
    No. 12 Civ. 3371 (CM), 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) .................. 14

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)........................................................... 5, 6-7

*Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728 (1981) ......................... 15

*Beckman v. Keybank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013)................................. *passim*

*Behzadi v. Int'l Creative Mgmt. Partners, LLC*,
    No. 14 Civ. 4382 (LGS), 2015 WL 4210906 (S.D.N.Y. July 9, 2015) ................... 17

*Benavidez v. Plaza Mexico, Inc.*, No. 09 Civ. 5076 (KNF) (S.D.N.Y.) ....................... 19

*Calle v. Elite Specialty Coatings Plus, Inc.*,
    No. 13 Civ. 6126 (NGG)(VMS), 2014 WL 6621081 (E.D.N.Y. Nov. 21, 2014) .................. 13

*Capsolas v. Pasta Resources Inc.*,
    No. 10 Civ. 5595 (RLE), 2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012) ................... 22

*Castagna v. Madison Square Garden, L.P.*,
    No. 09 Civ. 10211, 2011 WL 2208614 (S.D.N.Y. June 7, 2011)............................ 14

*Ceka v. PBM/CMSI Inc.*,
    No. 12 Civ. 1711 (DAB), 2014 WL 6812127 (S.D.N.Y. Dec. 2, 2014) ................... 17

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001)................................................. 6

*Cheeks v. Freeport Pancake House, Inc.*,
    No. 14 Civ. 299, 2015 WL 4664283 (2d Cir. 2015)................................................ 9

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)............................ *passim*

*Clark v. Ecolab Inc.*,
    Nos. 07 Civ. 8623 (PAC) *et al.*, 2010 WL 1948198 (S.D.N.Y. May 11, 2010)...................... 25

*In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344 (S.D.N.Y. 2014)................. 19, 23

*Colon v. Major Perry Street Corp.*,
    No. 12 Civ. 3788 (JPO), ECF No. 118 (S.D.N.Y. July 27, 2015) ............................ 18

*Corte v. Fig & Olive Founders LLC*,
    No. 14 Civ. 7186 (KPF), ECF No. 46 (S.D.N.Y. Oct. 7, 2015) ........................... 17

*Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011) .............................. 22

*DeLeon v. Wells Fargo Bank, N.A.*,
    No. 12 Civ. 4494 (RLE), 2015 WL 2255394 (S.D.N.Y. May 7, 2015)............................ *passim*

*Espinoza v. Wanrong Trading Corp.*,
    No. 13 Civ. 1727 (FB)(RML), ECF No. 33 (E.D.N.Y. Dec. 23, 2014) ................................... 18

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007).................................... 3

*Flores v. Anjost Corp.*,
    No. 11 Civ. 1531 (AT), 2014 WL 321831 (S.D.N.Y. Jan. 29, 2014)............................... *passim*

*Flores v. One Hanover, LLC*,
    No. 13 Civ. 5184 (AJP), 2014 WL 2567912 (S.D.N.Y. June 9, 2014) ................................. 4, 6

*Flynn v. N.Y. Dolls Gentlemen's Club*,
    No. 13 Civ. 6530 (PKC)(RLE), 2015 U.S. Dist. LEXIS 82772 (S.D.N.Y. Apr. 28, 2015) ..... 26

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ........................................... 9, 23

*Fujiwara v. Sushi Yasuda Ltd.*,
    No. 12 Civ. 8742 (WHP), 2014 WL 5840700 (S.D.N.Y. Nov. 12, 2014)........................ 16, 17

*Gilliam v. Addicts Rehab Crt. Fund*,
    No. 05 Civ. 3452 (RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ..................................... 9

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ........................... 21

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)........................................... *passim*

*Hart v. RCI Hospitality Holdings, Inc.*,
    No. 09 Civ. 03043 (PAE), 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015).............................. 20

*Heras v. OTG Mgmt, Inc.*,
    No. 12 Civ. 6138 (ERK), ECF No. 84 (E.D.N.Y. Sept. 22, 2015) .......................................... 18

*Hernandez v. Merrill Lynch & Co., Inc.*,
    No. 11 Civ. 8472 (KBF)(DCF), 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013)........... 11-12, 22

*Hernandez v. UBS AG and Financial Services, Inc.*,
    No. 15 Civ. 230 (VSB), ECF No. 32 (S.D.N.Y. July 16, 2015)............................................. 18

*In re Ira Haupt & Co.*, 304 F. Supp. 917 (S.D.N.Y. 1969) ............................................................ 7

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003)..................................................................................... 26

*Johnson v. Brennan*,
    No. 10 Civ. 4712 (CM), 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ................. 5, 10, 12, 13

*Juhani v. Crown Group Hosp., LLC*,
    No. 13 Civ. 3653 (VEC), ECF No. 73 (S.D.N.Y. Jan. 26, 2015) .................................... 17-18

*In re Lawrence*, --- N.E.3d ---, 2014 WL 5430622 (N.Y. Oct. 28, 2014) ..................................... 13

*In re Lloyd's Am. Trust Fund Litig.*,
    No. 96 Civ. 1262 (RWS), 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ............................. 26

*Lovaglio v. W & E Hospitality, Inc.*,
    No. 10 Civ. 7351 (LLS), 2012 WL 2775019 (S.D.N.Y. July 6, 2012) ................................ 3, 10

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................... 6

*Matheson v. T-Bone Rest., LLC*,
    No. 09 Civ. 4214 (DAB), 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) ................... 15, 23, 27

*Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214 (DAB) (S.D.N.Y.) ........................................ 19

*McDaniel v. Cnty. of Schenectady*, 595 F.3d 411 (2d Cir. 2010) ................................................. 11

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211 (8th Cir.1984) ............................................... 10

*Monzon v. 103W77 Partners, LLC*,
    Nos. 13 Civ. 5951 (AT), 2015 WL 993038 (S.D.N.Y. Mar. 5, 2015) ................................ 3, 17

*Munir v. Sunny's Limousine Serv., Inc.*,
    No. 13 Civ. 1581 (VSB), ECF No. 155 (S.D.N.Y. Jan. 8, 2015) ...................................... 18

*New Eng. Carpenters Health Benefits Fund v. First Databank, Inc.*,
    No. 05 Civ. 11148 (PBS), 2009 WL 2408560 (D. Mass. Aug. 3, 2009) ................................ 25

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ..................................... 9

*Paez v. Plaza Mexico, Inc.*, No. 09 Civ. 9574 (KNF) (S.D.N.Y.) ................................................. 19

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*,
    No. 08 Civ. 7670 (BSJ)(JCF), 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ............................. 24

*Picerni v. Bilingual Seit & Preschool Inc.*, 925 F. Supp. 2d 368 (E.D.N.Y. 2013) ...................... 9

*Puglisi v. TD Bank, N.A.*,
    No. 13 Civ. 637 (GRB), 2015 WL 4608655 (E.D.N.Y. July 30, 2015) .................................. 26

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*,
    No. 11 Civ. 520 (JLC), 2012 WL 651640 (S.D.N.Y. Feb. 24, 2012) ..................................... 26

*Rios v. Louya Corp.*, No. 14 Civ. 6800 (GHW) (S.D.N.Y.) ......................................................... 19

*In re Rite Aid Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005) ............................................. 25-26

*Sand v. Greenberg*,
    No. 08 Civ. 7840 (PAC), 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010) ...................................... 12

*Savoie v. Merchants Bank*, 166 F.3d 456 (2d Cir. 1999) .......................................................... 13

*Sewell v. Bovis Lend Lease, Inc.*,
    No. 09 Civ. 6548 (RLE), 2012 WL 1320124 (S.D.N.Y. April 16, 2012) .......................... 12, 27

*Spencer v. No Parking Today, Inc.*,
    No. 12 Civ. 6323 (ALC)(AJP), ECF No. 237 (S.D.N.Y. Feb. 20, 2015) ............................... 17

*Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780 (9th Cir. 2007)...................................................... 26

*Strougo ex rei. Brazilian Equity Fund, Inc.* v. *Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003)........................................................................... 12-13

*Sukhnandan v. Royal Health Care of Long Island LLC*,
   No. 12 Civ. 4216 (RLE), 2014 WL 3778173 (S.D.N.Y. July 31, 2014) .......................... *passim*

*In re Sumitomo Copper Litig.,* 74 F. Supp. 2d 393 (S.D.N.Y. 1999) ........................................... 23

*Taft v. Ackermans*,
   No. 02 Civ. 7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007).............................. 18, 21

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008)...................................... 2, 7, 26

*Tiro v. Pub. House Investments, LLC*,
   No. 11 Civ. 7679 (CM), 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) .......................... *passim*

*Varljen v. H.J. Meyers & Co.*,
   No. 97 Civ. 6742 (DLC), 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000).................................. 24

*Velez v. Novartis Pharmaceuticals Corp.*,
   No. 04 Civ. 09194 (CM), 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ............................... 3

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)................................................... 12, 25

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ............................... *passim*

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)............................................. 6

*Yuzary v. HSBC Bank USA, N.A.*,
   No. 12 Civ. 3693 (PGG), 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013)............................ 11, 25

*Zeltser v. Merrill Lynch & Co.*,
   No. 13 Civ. 1531 (FM), 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ................................. 26

**Statutes**.................................................................................................**Page Number**

Fair Labor Standards Act ("FLSA")................................................................................ *passim*

Fed. R. Civ. P. 23........................................................................................................... *passim*

## INTRODUCTION

Plaintiff Pamela Bravo (hereinafter "Plaintiff," together with Opt-In Plaintiffs, "Plaintiffs") submits this memorandum of law in support of her Motion for Final Approval of the Class Action Settlement brought on behalf of individuals who have worked for Palm West Corp., Just One More Restaurant Corp., Palm Restaurant Inc., Palm NY Downtown, LLC, Palm Management Corp., Walter Ganzi, Jr., and Bruce Bozzi, Sr. (collectively, the "Palm Restaurants" or "Defendants") as servers, server assistants, back waiters, bussers, runners, coat checkers, bartenders, or barbacks between November 19, 2008 and August 1, 2015, *excluding* those Tipped Workers who participated in the settlement in *Mark Hunter Davis and Jorelle Aronovich, on behalf of themselves and others similarly situated v. Palm Management Corporation and Palm Restaurant, Inc. d/b/a Palm West Restaurant, Palm One Restaurant, and Palm Too Restaurant,* No. 09 Civ. 07348 (RMB) (AJP), in the Southern District of New York, and whose employment terminated on or before January 12, 2010 (collectively, "Class Members").  The parties' Two Million Seven Hundred Fifty Thousand Dollar ($2,750,000.00) settlement resolves all claims before this Court, pursuant to the proposed compromise set forth in the Settlement Agreement and Release ("Settlement Agreement"), and satisfies all criteria for final approval.[1]

On September 30, 2015, the Court took the first step in the settlement approval process by granting preliminary approval, directing that notice be mailed to Class Members, and setting the date for the final fairness hearing. Schaffer Decl. ¶ 28; **Exhibit ("Ex.") B**, Declaration of Claims Administrator, Troy Walitsky ("Walitsky Decl."), Class Notice (attached as Exhibit A to the Walitsky Decl.).[2]  Class Members have been notified of the terms of the settlement, and

---

[1] *See* Declaration of Brian S. Schaffer ("Schaffer Decl.") for procedural history of the case.  Schaffer Decl. ¶¶ 5-21, 27-30.

[2] All Exhibits are attached to the Schaffer Decl.

Class Counsel has received numerous phone calls and emails from Class Members who have reacted positively to the settlement terms. Schaffer Decl. ¶ 30.  Only two Class Members have opted-out of the settlement and zero Class Members have objected to the settlement. *Id.*; **Ex. B**, Walitsky Decl. ¶¶ 11.  With such overwhelming support, and for the reasons stated below, the Court should grant final approval.

## ARGUMENT

## I.      THE PROPOSED RULE 23 SETTLEMENT SHOULD BE APPROVED

"Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate." *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216 (RLE), 2014 WL 3778173, at *4 (S.D.N.Y. July 31, 2014) (citing Fed. R. Civ. P. 23).  "Approval of a class action settlement is within the Court's discretion, 'which should be exercised in light of the general judicial policy favoring settlement.'" *Tiro v. Pub. House Investments, LLC*, No. 11 Civ. 7679 (CM), 2013 WL 4830949, at *4 (S.D.N.Y. Sept. 10, 2013) (citing *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008)).  "The Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974).

### A.      The Proposed Settlement Class Should Be Certified.

For the reasons set forth in Plaintiff's Motion for Preliminary Approval, the Court should now grant final certification because the settlement class conditionally certified by the Court on September 30, 2015 satisfies the requirements of Fed. R. Civ. P. 23(a) & (b)(3). *See* ECF No. 51, 52.

**B.   The Proposed Settlement Is Fair, Reasonable And Adequate, And Should Be Approved.**

District courts "must determine whether the settlement, taken as a whole, is fair, reasonable and adequate" when approving a class action settlement. *Tiro*, 2013 WL 4830949, at *5 (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *3 (S.D.N.Y. July 27, 2007)).   "Federal courts within this Circuit make the fairness determination based upon 'two types of evidence:' (1) substantive and (2) procedural." *Velez v. Novartis Pharmaceuticals Corp.*, No. 04 Civ. 09194 (CM), 2010 WL 4877852, at *11 (S.D.N.Y. Nov. 30, 2010) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)).   "Courts examine procedural and substantive fairness in light of the 'strong judicial policy favoring settlements' of class action suits." *Flores v. Anjost Corp.*, No. 11 Civ. 1531 (AT), 2014 WL 321831, at *4 (S.D.N.Y. Jan. 29, 2014) (quoting *Wal-Mart Stores*, 396 F.3d at 116); *see also In re EVCI*, 2007 WL 2230177, at *4 ("Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement"); *Lovaglio v. W & E Hospitality, Inc.*, No. 10 Civ. 7351 (LLS), 2012 WL 2775019, at *2 (S.D.N.Y. July 6, 2012) (approving settlement where terms are fair, reasonable, adequate, and not a product of collusion).

**1.   The Settlement Is Procedurally Fair And Should Be Approved.**

The instant settlement is procedurally fair because it was reached after Class Counsel conducted a thorough investigation of the claims and defenses, evaluated the strength and weaknesses of those claims and defenses, and engaged in arm's length negotiations with Defendants, including a settlement conference before Magistrate Judge Netburn. Schaffer Decl. ¶¶ 13-21; *see Monzon v. 103W77 Partners, LLC*, No. 13 Civ. 5951 (AT), 2015 WL 993038, at *1 (S.D.N.Y. Mar. 5, 2015) (finding settlement fair where it was reached after meaningful

discovery and mediation with an experienced employment-law mediator, where questions of law and fact exist such that the value of immediate recovery outweighs the mere possibility of further relief, and where the Class has a favorable response to the settlement with no opt-outs or objections); *Sukhnandan*, 2014 WL 3778173, at *4 (collecting cases and stating that "[t]he Parties' arm's-length settlement negotiations involved counsel and a professional mediator, raising a presumption that the settlement achieved meets the requirements of due process"); *Flores v. One Hanover, LLC*, No. 13 Civ. 5184 (AJP), 2014 WL 2567912, at *3 (S.D.N.Y. June 9, 2014) (finding that settlement negotiations were procedurally fair where the parties were represented by experienced counsel and the settlement was the by-product of mediation before an experienced employment law mediator).

### 2. The Settlement Is Substantively Fair And Meets The *Grinnell* Standards For Class Action Settlement Approval.

The settlement is substantively fair because its terms are fair, adequate, and reasonable pursuant to the analytical framework set forth by the Second Circuit in *Grinnell* for evaluating the substantive fairness of a class action settlement. 495 F.2d at 448, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the [d]efendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 463. "The evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice," rather than applying the factors in a systematic manner.

*Grinnell.*, 495 F.2d at 468.  Here, all of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement.

### a) *Litigation Through Trial Would Be Complex, Costly, And Long (Grinnell Factor 1).*

"To assess the substantive fairness of a settlement, courts weigh the benefits of a potential settlement against the time and expense of continued litigation." *Tiro*, 2013 WL 4830949, at *6 (citation omitted).  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)).

Here, continued litigation of this complex wage and hour case would cause additional expense and delay.  In addition to the already significant amount of discovery conducted up to this point pertaining to Defendants' payroll and time records, additional discovery would be required to establish liability and damages, including depositions of Plaintiffs, Class Members, Defendants, and Defendants' managers.  A fact-intensive trial would be necessary and the preparation and putting on of evidence at such a trial would consume tremendous amounts of time and resources, as well as demand substantial judicial resources.  A trial on damages would be costly and would further defer closure.  Furthermore, any judgment would likely be appealed, which would extend the duration of the litigation.  However, the settlement agreed to by the parties makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of final approval. *See Anjost*, 2014 WL 321831, at *5 (finding that the first *Grinnell* factor supported approval because "[l]itigation through trial would be complex, expensive and long").

- 5 -

**b)** ***The Reaction Of The Class Has Been Positive (Grinnell Factor 2).***

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). "The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness." *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494 (RLE), 2015 WL 2255394, at *4 (S.D.N.Y. May 7, 2015) (internal citations and quotation marks omitted). Here, Class Members have shown an enthusiastic response to the settlement. The Class Notice included an explanation of the allocation formula and an estimate of each Class Member's award, and informed Class Members of their right to object to or exclude themselves from the settlement. **Ex. B**, Walitsky Decl., Class Notice at 5. Only two Class Members have opted out of the settlement and zero Class Members have objected to the settlement. Schaffer Decl. ¶ 30; **Ex. B**, Walitsky Decl. ¶¶ 11. "This favorable response demonstrates that the class approves of the Settlement and supports final approval." *Sukhnandan*, 2014 WL 3778173, at *5 (collecting cases). Therefore, this factor weighs in favor of final approval.

**c)** ***Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (Grinnell Factor 3).***

The third *Grinnell* factor questions "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)). "The Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make ... an appraisal' of the Settlement." *One Hanover*, 2014 WL 2567912, at *4

(quoting *In re Austrian*, 80 F. Supp. 2d at 176).   The extensive discovery completed by the parties here meets this standard.

### d) *Plaintiffs Would Face Real Risks If The Case Proceeded (Grinnell Factors 4 And 5).*

Even though Plaintiffs consider their case to be a strong one, they still face considerable risks as to liability and damages.   Courts must "assess the risks of litigation against the certainty of recovery offered by the Settlement" when evaluating the risks of establishing liability. *In re Telik*, 576 F. Supp. 2d at 579.   Courts recognize that "[l]itigation inherently involves risks" and that regardless of the plaintiff's perceived strength of a case, liability is "no sure thing." *Wal-Mart Stores*, 396 F.3d at 118.   "Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *Anjost*, 2014 WL 321831, at *5 (quoting *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969)).

Here, because Plaintiffs' claims are so fact-intensive, a trial on the merits would involve significant risk.   Examples of crucial factual issues this case presents are whether:   Defendants did not give the correct tip credit notification to employees who earned the tip credit minimum wage; dishwashers and glass polishers were impermissibly included in the tip pool at the Palm West location; Defendants made deductions for meals regardless of the amount of shifts they worked or meals actually taken; and the annual wage notices and wage statements were non-compliant with the NYLL.   To prove these issues would require extensive amounts of litigation with a substantial amount of fact-intensive discovery.   Although Plaintiffs believe that they could ultimately establish Defendants' liability, it would require significant factual development and favorable outcomes at trial and on appeal, both of which are inherently uncertain and lengthy. By agreeing to the proposed settlement, Plaintiffs alleviate these concerns, and therefore these factors weigh in favor of final approval.

**e)** ***Establishing A Class And Maintaining It Through Trial Would Not Be Simple (Grinnell Factor 6).***

Another inherent risk is obtaining collective and class certification, and maintaining it through trial.  At this point, the Court has not certified an FLSA collective or Rule 23 Class, and to do so would first require further discovery and intense, exhaustive briefing by the parties. Even if a class is certified, Defendants would likely seek permission to file an interlocutory appeal under Federal Rule of Civil Procedure 23(f).  Risk, expense, and delay permeate such a process.  Settlement eliminates this risk, expense, and delay. *Sukhnandan*, 2014 WL 3778173, at *6; *Tiro*, 2013 WL 4830949, at *8.  Thus again, this factor weighs in favor of final approval.

**f)** ***Defendants' Ability To Withstand A Greater Judgment Is Not Assured (Grinnell Factor 7).***

Here, the Settlement Agreement eliminates the risk of collection by requiring Defendants to: (a) fund the $2,750,000.00 Settlement Fund in two installments (25% of the Settlement Amount by January 15, 2016 and the remaining 75% by June 30, 2016); (b) execute a Confession of Judgment, whereby the entire unpaid amount of the Settlement Fund plus ten percent (10%) will immediately become due in the event that Defendants default on a payment; and (c) provide Class Counsel with a Personal Financial Statement within seven days of the Court's entry, if any, of the Confession of Judgment. **Ex. A**, Settlement Agreement ¶¶ 3.1. Nevertheless, even if Defendants could afford to pay more, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Sukhnandan*, 2014 WL 3778173, at *7 (internal citation omitted).  Under these circumstances, this factor is neutral and does not preclude the Court from approving the final settlement.

- 8 -

       **g)** ***The Settlement Fund Is Substantial In Light Of The Possible***
           ***Recovery And The Attendant Risks Of Litigation (Grinnell***
           ***Factors 8 And 9).***

"The determination of whether a settlement amount is reasonable does not involve the

use of a mathematical equation yielding a particularized sum." *DeLeon*, 2015 WL 2255394 at *4

(internal citations and quotation marks omitted).  "Instead, 'there is a range of reasonableness

with respect to a settlement – a range which recognizes the uncertainties of law and fact in any

particular case and the concomitant risks and costs necessarily inherent in taking any litigation to

completion.'" *Id.* (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005)).

"[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a

hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*

*Corp.*, 495 F.2d at 455 n.2; *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615,

628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of

the potential recovery will not *per se* render the settlement inadequate or unfair.").  Moreover,

when settlement assures immediate payment of substantial amounts to class members, "even if it

means sacrificing speculative payment of a hypothetically larger amount years down the road,"

settlement is reasonable under this factor.  *Gilliam v. Addicts Rehab Crt. Fund*, No. 05 Civ. 3452

(RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (internal quotation marks and citation

omitted).

     Here, the $2,750,000.00 settlement provides much more than "a fraction of the potential

recovery."  Class Members will each receive an average net settlement payment (net of

attorneys' fees and costs, service awards, and claims administration fees) of approximately

$3,701.42. Schaffer Decl. ¶ 26; Walitsky Decl. ¶ 12; *see Cheeks v. Freeport Pancake House,*

*Inc.,* No. 14 Civ. 299, 2015 WL 4664283, at *7 (2d Cir. 2015) (quoting *Picerni v. Bilingual Seit*

*& Preschool Inc.*, 925 F. Supp. 2d 368 (E.D.N.Y. 2013) ("noting that FLSA cases tend to settle

for between $500 and $2000 dollars in unpaid wages."). Of the 486 Class Members, approximately 280 will receive at least $1,000.00, while approximately 40 of them will receive an award of at least $10,000.00; the maximum award amount was $23,313.93. Schaffer Decl. ¶ 26; Walitsky Decl. ¶ 12. Thus, "weighing the benefits of the settlement against the risks associated with proceeding in the litigation," the settlement amount achieved in the instant action is more than reasonable. *Tiro*, 2013 WL 4830949, at \*10 (citations omitted); *see Lovaglio*, 2012 WL 2775019, at \*2 (approving settlement where "the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation"). As such, this factor also weighs in favor of final approval.

## II.   THE COURT SHOULD ISSUE FINAL APPROVAL OF THE FLSA SETTLEMENT

Plaintiffs also request that the Court approve the settlement of their FLSA claims. "The standard for approval of an FLSA settlement is significantly lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as a Rule 23 settlement." *Tiro*, 2013 WL 4830949, at \*10 (citing *Johnson*, 2011 WL 4357376, at \*12; *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir.1984)). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes" and typically "regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *DeLeon*, 2015 WL 2255394, at \*4 (internal citations and quotation marks omitted). If the proposed settlement reflects a reasonable compromise of the contested issues, the court should approve the settlement. *Id*. Here, the parties were represented by counsel experienced in wage and hour law, and the parties engaged in contentious litigation and months of arm's length negotiations, including the exchange of extensive discovery and damages calculations in an effort to reach the settlement. Schaffer Decl. ¶¶ 5-23,

41-53.  Therefore, FLSA approval is warranted. *See, e.g., Sukhnandan*, 2014 WL 3778173, at *7

(granting final approval of FLSA settlement); *Tiro*, 2013 WL 4830949, at *10 (same).

## III.   CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED

Plaintiffs' unopposed motion for Final Approval includes a request for attorneys' fees of

one-third of the common fund ($916,666.67) and reimbursement of $1,661.57 in litigation costs

and expenses. Schaffer Decl. ¶ 37.  The Settlement Agreement and Court-approved Class Notice

sent to all Class Members provide that Class Counsel will apply to the Court for their fees and

costs. *Id.* ¶¶ 38; **Ex. A**, Settlement Agreement ¶ 3.2; **Ex. B**, Walitsky Decl., Class Notice at 5.

To date, no Class Member has objected to these requests. Schaffer Decl. ¶ 38; **Ex. B**, Walitsky

Decl. ¶ 11.

Although there are two ways to compensate attorneys for successful prosecution of

statutory claims, the lodestar and percentage of the fund method, "using the 'percentage-of-

recovery' method … is consistent with the 'trend in this Circuit.'" *DeLeon*, 2015 WL 2255394,

at *5 (citing *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).

### A.   <u>The Percentage Method Is The Preferred Method For Awarding Attorneys' Fees In Common Fund Cases In The Second Circuit.</u>

"In wage and hour class action lawsuits, public policy favors a common fund attorneys'

fee award." *DeLeon*, 2015 WL 2255394, at *6; *Wal-Mart Stores*, 396 F.3d at 121; *Anjost*, 2014

WL 321831, at *8; *Sukhnandan*, 2014 WL 3778173, at *9; *Yuzary v. HSBC Bank USA, N.A.*, No.

12 Civ. 3693 (PGG), 2013 WL 5492998, at *9; *Tiro*, 2013 WL 4830949, at *12.   "Where

relatively small claims can only be prosecuted through aggregate litigation, and the law relies on

prosecution by 'private attorneys general,' attorneys who fill the private attorney general role

must be adequately compensated for their efforts." *Anjost*, 2014 WL 321831, at *8 (citations

omitted); *see also Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472 (KBF)(DCF), 2013 WL 1209563, at *8 (S.D.N.Y. Mar. 21, 2013) ("Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.") (internal quotation marks omitted).  "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Anjost*, 2014 WL 321831, at *8 (citations omitted); *see Sand v. Greenberg*, No. 08 Civ. 7840 (PAC), 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

There are several reasons why courts prefer the percentage method over the lodestar method to compensate attorneys for successful prosecution of statutory claims.  First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores*, 396 F.3d at 121 (internal quotation marks omitted); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2001) (finding that "the lodestar method does not reward early settlement" and that "class counsel should [not] necessarily receive a lesser fee for settling a case quickly").

Second, the percentage method is closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *Johnson*, 2011 WL 4357376, at *14 (internal quotation marks and citation omitted); *see also Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548 (RLE), 2012 WL 1320124, at *10 ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded."); *Strougo ex rel.*

*Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) ("[T]he percentage method is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients."). Not surprisingly, courts in this Circuit regularly approve requests for one-third contingency fees, where such requests are "consistent with Plaintiffs' retainer agreement with counsel and with the consent to sue form signed by all Plaintiffs." *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13 Civ. 6126 (NGG)(VMS), 2014 WL 6621081, at \*2-3 (E.D.N.Y. Nov. 21, 2014) (citation omitted). Recognizing the "significant risks" undertaken by attorneys who work on contingency, the New York State Court of Appeals has also upheld contingency fees of one-third or higher, where such fee arrangements are embodied in executed retainer agreements. *See In re Lawrence*, --- N.E.3d ---, 2014 WL 5430622 (N.Y. Oct. 28, 2014) (upholding 40 percent contingency fee and stating that, "[a]s a general rule, we enforce clear and complete documents, like the retainer agreement, according to their terms.") (citation omitted).

Third, the percentage of the fund method promotes early resolution, and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours. It "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores*, 396 F.3d at 121 (internal quotation marks and additional citation omitted); *see also Johnson*, 2011 WL 4357376, at \*14. In that regard, the percentage method discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method. *Savoie v. Merchants Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method.").

Finally, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Asare v. Change Grp. of N.Y., Inc.*, No. 12 Civ. 3371 (CM), 2013 WL 6144764, at *17 (S.D.N.Y. Nov. 18, 2013) (quoting *Savoie*, 166 F.3d at 461 n.4).  Early settlements should be encouraged, "when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013); *see also Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (commending the plaintiffs' attorneys for negotiating early settlement).

Based on the above, and since Plaintiff's retainer agreement and the Class Notices provide for an attorneys' fee of one-third of the total settlement, Plaintiffs' respectfully submit that the Court should follow the trend in the Second Circuit and use the percentage of fund method in this common fund case. *See DeLeon*, 2015 WL 2255394, at *6; *Anjost*, 2014 WL 321831, at *9.

**B.    The *Goldberger* Factors Support An Award Of One-Third Of The Common Fund.**

In determining the reasonableness of fee applications, courts consider the following six factors set forth by the Second Circuit in *Goldberger*: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. 209 F.3d at 50.  Here, all of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

- 14 -

### 1.   Class Counsel's Time And Labor.

Class Counsel spent significant effort to achieve the $2,750,000.00 settlement. Schaffer Decl. ¶ 54.  Activities conducted by Class Counsel include: interviewing the named and opt-in Plaintiffs on numerous occasions throughout the course of the litigation; conducting a thorough investigation of client claims and documents; extensive legal research; obtaining and analyzing thousands of pages of documents related to Defendants' compensation practices; completing a detailed, class-wide damages analysis; preparing for and participating in a lengthy settlement conference; and successfully negotiating the terms of the settlement. *Id.* ¶¶ 5-6, 13-21.  In addition, since the execution of the Settlement Agreement, Class Counsel has responded to telephone calls and emails from numerous Class Members requesting further information regarding the terms of the settlement, and prepared motions for preliminary and final approval. *Id.* ¶ 59.  In performing these tasks, Class Counsel expended more than 380 hours. *Id.* ¶ 54. These hours are reasonable for a complex case like this one. *Id.* ¶ 55.  Moreover, Class Counsel anticipates spending additional time in the future preparing for the Fairness Hearing and administering the settlement, and the requested fee award is also meant to compensate for that time. *Id.* ¶ 54, 59; *see, e.g., Anjost*, 2014 WL 321831, at *9 (citing *Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214 (DAB), 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011)).

### 2.   The Litigation's Magnitude And Complexity.

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *Goldberger*, 209 F.3d at 50.  "Courts have recognized that wage and hour cases involve complex legal issues." *Tiro*, 2013 WL 4830949, at * 13 (citation omitted); *see Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981) ("FLSA claims typically involve complex mixed questions of fact and law.").  "Among FLSA cases, the most

- 15 -

complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to Rule 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)." *Sukhnandan*, 2014 WL 3778173, at \*10.

In addition, this case hinged on several mixed questions of fact and law.  For example, both parties disputed whether: Class Members were properly notified of the tip credit; Class Members worked the hours they claimed to have worked "off-the-clock;" glass polishers and dishwashers were eligible to be included in the tip pool; Class Members were properly compensated and received all gratuities owed; Class Members received proper wage statements and pay notices; any violations of the FLSA and NYLL were willful or in bad faith; and class and collective action certification would be granted and upheld.  The numerous and complex issues involved in this action support approval of Class Counsel's attorneys' fee request. *See, e.g., Tiro*, 2013 WL 4830949, at \*13 (awarding fees equal to one-third of the settlement fund where "[t]he numerous and complex issues involved in this action support approval of Class Counsel's attorneys' fee request.").

Consequently, the complexity and risks of this case are different than those addressed by Judge Pauley in *Fujiwara v. Sushi Yasuda Ltd.*, No. 12 Civ. 8742 (WHP), 2014 WL 5840700 (S.D.N.Y. Nov. 12, 2014).  To the extent that the court in *Fujiwara* paints all wage and hour cases with the same brush, *see* 2014 WL 5840700, at \*4 ("Wage and hour cases are not unduly complex."), Plaintiffs respectfully disagree.  Some wage and hour matters are much more complicated and riskier than others.

Unlike in *Fujiwara*, where "obligations under the FLSA and NYLL are relatively clear and liability turns on factual issues," here, class certification and liability were far from clear and

would have required thousands of hours of attorney time and tens of thousands of dollars in costs to establish. *Id.* at *7.   Moreover, the instant matter's tip misappropriation claim makes this case complex in nature as the issue of whether a glass polisher who has minimal customer interaction can be included in a tip pool at the Palm West restaurant location is a fact-intensive issue, and Defendants would likely argue that the differences among various job positions and five separately incorporated restaurants and other individualized questions preclude class certification. *Cf. with Fujiwara*, 2014 WL 5840700, at *7 (the court noted that "it would likely not have been difficult to certify a class of employees working the same positions as the [c]lass [r]epresentatives at a single restaurant location.").   Further, since *Fujiwara,* other judges in this Circuit have continued to follow the common practice of awarding one-third of a settlement fund in wage and hour actions where settlement is reached relatively early in the litigation.  *See, e.g.*, **Ex. D**, *Corte v. Fig & Olive Founders LLC*, No. 14 Civ. 7186 (KPF), ECF No. 46, at p. 4 (S.D.N.Y. Oct. 7, 2015) (granting attorneys' fees of one-third in a wage and hour class action); *Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14 Civ. 4382 (LGS), 2015 WL 4210906, at *2-3 (S.D.N.Y. July 9, 2015) (approving attorneys' fees award of one-third of the fund in case brought on behalf of unpaid interns); *Ceka v. PBM/CMSI Inc.*, No. 12 Civ. 1711 (DAB), 2014 WL 6812127 (S.D.N.Y. Dec. 2, 2014) (awarding attorneys representing one-third of the fund in settlement reached after only informal discovery and prior to dispositive motions); *DeLeon*, 2015 WL 2255394, at *5 (awarding Class Counsel $616,666.66 in attorneys' fees equal to one-third of the settlement fund in a wage and hour settlement); *Monzon*, 2015 WL 993038, at *2 (awarding Class Counsel one-third of the settlement amount, or $166,666.67, as attorneys' fees in a wage and hour settlement); **Ex. E**, *Spencer v. No Parking Today, Inc.*, 12 Civ. 6323 (ALC)(AJP), ECF

No. 237, at *4 (S.D.N.Y. Feb. 20, 2015) (awarding attorneys one-third of the settlement amount equaling $150,000 in a wage and hour settlement); **Ex. F**, *Juhani v. Crown Group Hosp., LLC*, No. 13 Civ. 3653 (VEC), ECF No. 73, at *3 (S.D.N.Y. Jan. 26, 2015) (awarding class counsel one-third of the $575,000 settlement in wage and hour case); **Ex. G**, *Munir v. Sunny's Limousine Serv., Inc.*, No. 13 Civ. 1581 (VSB), ECF No. 155, at *3 (S.D.N.Y. Jan. 8, 2015) (awarding attorneys' fees of $1,166,666.67, equaling one-third of the fund, in wage and hour settlement); **Ex. H**, *Espinoza v. Wanrong Trading Corp.*, No. 13 Civ. 1727 (FB)(RML), ECF No. 33, at *3 (E.D.N.Y. Dec. 23, 2014) (awarding attorneys' fees of $220,000, equaling one-third of the fund in wage and hour settlement); **Ex. I**, *Amador v. Morgan Stanley & Co., LLC*, No. 11 Civ. 4326 (RJS), Hr'g Tr. at 16-17 (S.D.N.Y. Dec. 19, 2014) (awarding attorneys' fees of one-third of the fund in wage and hour misclassification case involving $4.2 million fund); **Ex. J**, *Heras v. OTG Mgmt, Inc.*, No. 12 Civ. 6138 (ERK), ECF No. 84, at *9 (E.D.N.Y. Sept. 22, 2015) (awarding the class counsel one-third of the total settlement amount ($166,666.66)); **Ex. K**, *Colon v. Major Perry Street Corp.*, No. 12 Civ. 3788 (JPO), ECF No. 118, at *18 (S.D.N.Y. July 27, 2015) (awarding attorneys' fees of $208,125.00, equaling one-third of the settlement fund); **Ex. L**, *Hernandez v. UBS AG and Financial Services, Inc.*, No. 15 Civ. 230 (VSB), ECF No. 32, at *7 (S.D.N.Y. July 16, 2015) (awarding class counsel $437,500, which is one-third of the settlement fund).

### 3. The Risks Of Litigation.

"Courts of this Circuit have recognized the risk of litigation to be perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *Tiro,* 2013 WL 4830949, at *13 (citing *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007)). "[D]espite the most vigorous and competent of efforts, success is

never guaranteed." *Id.*   Class Counsel agreed to prosecute this action without any assurance of payment for their services; litigating this case on a wholly contingent basis in the face of significant risk. Schaffer Decl. ¶ 60.   The retainer agreement signed by Plaintiff Bravo reflects the contingency fee arrangement. *Id.*   Class Counsel entered into a contingency fee arrangement knowing that there was a very real possibility of an unsuccessful outcome and, thus, no fee of any kind. *Id.*; *see Beckman*, 293 F.R.D. at 479 ("Contingency risk is the principal, though not exclusive, factor courts should consider in their determination of attorneys' fees.") (internal quotation and citation omitted); *see also In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 351 (S.D.N.Y. 2014) (quoting *Goldberger*, 209 F.3d at 55) ("risk should be considered 'as of when the case is filed.'").   Class Counsel continues to represent employees on a wholly contingent basis despite, unfortunately, having suffered several major (and very expensive) losses in wage and hour cases over the years.   Examples of the risks taken on by F&S are demonstrated in *Benavidez v. Plaza Mexico, Inc.*, No. 09 Civ. 5076 (KNF) (S.D.N.Y.) and *Paez v. Plaza Mexico, Inc.*, No. 09 Civ. 9574 (KNF) (S.D.N.Y.) (collectively, "Plaza Mexico"), *Rios et al. v. Louya Corp. et al.*, No. 14 Civ. 6800 (GHW) (S.D.N.Y.), and *Matheson v. T-Bone Restaurant, LLC a/k/a Strip House New York*, No. No. 09 Civ. 4214 (DAB) (S.D.N.Y.).   In the *Plaza Mexico* cases, the defendants filed bankruptcy after extensive discovery and motion practice had taken place.   Even after the court entered a judgment against the defendants in excess of $5,000,000.00 after a trial on damages, neither the plaintiffs nor F&S have collected any money in connection with both those cases. Schaffer Decl. ¶ 60.   In *Rios*, Counsel obtained a verdict of $1,044,512.62 on behalf seven restaurant workers after a week-long bench trial. However, due to the defendants' bankruptcy filings, it is unlikely that the plaintiffs or F&S will

recovery any money in that case. *Id.* ¶ 61.  Finally, in *Matheson*, at the time of the plaintiffs' final approval motion regarding class settlement, Class Counsel's lodestar was negative 1.43. During the subsequent three years, F&S has expended further time and resources in collecting the settlement payment; to date, the defendants remain in default as they still owe $123,574.64 out of $495,000.  The above three examples highlight the risks associated with settlement and obtaining a judgment after trial.  Unfortunately, Class Counsel has also recovered zero or has had a negative lodestar in other cases as well. *Id.*

Class and collective wage and hour cases like this one are, by their very nature, complicated and time-consuming.  Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. *Tiro*, 2013 WL 4830949, at *14.  Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Schaffer Decl. ¶ 60.  Class Counsel stood to gain nothing in the event the case was unsuccessful. *Id.* ¶ 61.  Class Counsel takes on difficult cases like this one because we believe that they are important as many individual workers may be unwilling or unable to front the costs of litigation for an outcome that is uncertain. *Id.* ¶ 62.  In justifying a recent fee award, Judge Engelmayer recognized that counsel "retained its obligations to pay salaries and overhead, and assuredly forewent other potential clients and cases.  A law firm is a business, too." *Hart v. RCI Hospitality Holdings, Inc.*, No. 09 Civ. 03043 (PAE), 2015 WL 5577713, at *16 (S.D.N.Y. Sept. 22, 2015).  The court granted class counsel's "substantial fee award" to "recognize the outsize risks that [class counsel] took in investing in [that] uncertain lawsuit." *Id.*

Thus, Class Counsel's attorneys' fee request is supported by this factor as well. *See, e.g.,* *Sukhnandan*, 2014 WL 3778173, at *11-12 (approving request for attorneys' fees in wage and hour class action where continued litigation involved similar risks).

### 4.  Quality Of The Representation.

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft*, 2007 WL 414493, at *10 (citation omitted).  Here, the recovery obtained was substantial in light of the risks of litigation.  Defendants agreed to pay a total of $2,750,000.00 to settle this litigation. These risks included the risk of losing both collective and class certification, having a collective action decertified, losing on the merits, and losing on appeal.  Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

Furthermore, Class Counsel has extensive experience representing workers in wage and hour class and collective actions, and this experience was directly responsible for bringing about the positive settlement. Schaffer Decl. ¶¶ 41-53; *see, e.g., Sukhnandan*, 2014 WL 3778173, at *12-13 (recognizing that Class Counsel "has substantial experience in wage and hour class and collective action cases" and citing such experience as a factor supporting an attorneys' fee award of 33% of the fund); *Tiro*, 2013 WL 4830949, at *14 ("Class Counsel have extensive experience representing workers in wage and hour class and collective actions, and this experience was directly responsible for bringing about the positive settlement.").  Moreover, Defendants were represented by Kenneth DiGia and Jeffrey Ruzal, experienced labor and employment attorneys from Epstein Becker Green, a large well-respected nationwide employment law firm. *See In re In*

*re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 467 (S.D.N.Y. 2004) ("[T]he quality of opposing counsel is also important in evaluating the quality of [Class Counsel's] work").

### 5.   The Fee Is Reasonable In Relation To The Settlement.

Class Counsel's request for one-third of the fund "is reasonable and consistent with the norms of class litigation in this circuit." *Sukhnandan*, 2014 WL 3778173, at *13 (citation and internal quotation marks omitted).  Courts in this Circuit repeatedly grant requests for one-third of the fund in cases with settlement funds similar to this one. *See, e.g., Anjost*, 2014 WL 321831, at *9 (awarding one-third of the settlement fund in wage and hour class action settlement); *Tiro*, 2013 WL 4830949, at *12 (same); *Beckman*, 293 F.R.D. at 481 (a 33% fee is not a windfall "because the requested amount is consistent with the norms of class litigation in this circuit") (internal quotation marks omitted).   Further, Courts in this Circuit have routinely approved requests for one-third of the fund in cases with settlement funds similar or substantially larger than the present action. *See, e.g., Beckman*, 293 F.R.D. at 482 (awarding one-third of $4.9 million fund in wage and hour action, and stating that "the requested fee award appears to be reasonable"); *Hernandez*,  2013 WL 1209563, at *8 ("Class Counsel's request for 33% of the Fund [$2,310,000] is reasonable and consistent with the norms of class litigation in this circuit."); *Capsolas v. Pasta Resources Inc.*, 2012 WL 4760910, at *8 (S.D.N.Y. Oct. 5, 2012) (awarding one-third of $5.25 million fund in wage and hour case); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185-86 (W.D.N.Y. 2011) (awarding one-third of $42 million settlement fund).   Therefore, this factor weighs in favor of granting the requested fees.

### 6.   Public Policy Considerations.

Public policy considerations weigh in favor of granting Class Counsel's requested fees. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have

taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999).  "Counsel's fees should reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.  While court awarded fees must be reasonable, setting fees too low or randomly will create poor incentives to bringing large class action cases." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d at 352 (internal quotation marks and citations omitted).

The FLSA and the NYLL are remedial statutes designed to protect the wages of workers. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective – ensuring that every employee receives "a fair day's pay for a fair day's work").  "Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes." *Matheson*, 2011 WL 6268216, at *8 (citations omitted).  If courts denied sufficient attorneys' fees "no attorneys … would likely be willing to take on … small-scale class actions." *Frank*, 228 F.R.D. at 189; *See also* **Ex.** I, *Amador v. Morgan Stanley & Co., LLC*, No. 11 Civ. 4326, hr'g tr. at p. 16  (S.D.N.Y. Dec. 19, 2014) (recognizing that "one-third is not too high for [wage and hour] cases like this . . . It's important that lawyers have incentives to bring cases like this").

Here, Class Counsel successfully negotiated a settlement that obtains significant monetary compensation for Class Members.  Moreover, Defendants also claimed that they had modified their wage and hour policies following the commencement of the action.  These considerations weigh in favor of granting the fee request. *See, e.g., Tiro*, 2013 WL 4830949, at *15 (finding 33.3% fee award reasonable where settlement redressed substantial portion of monetary damage suffered by class members and resulted in new policies) (citing *Beckman*, 293

F.R.D. at 481).

**C.   The Lodestar Cross Check Further Supports An Award To Class Counsel Of One-Third Of The Settlement Fund.**

"Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a 'baseline' or as a 'cross check.'" *Tiro*, 2013 WL 4830949, at *15 (citation omitted). While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *see In re Global Crossing*, 225 F.R.D. at 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check); *Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742 (DLC), 2000 WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000) (using an "unexamined lodestar figure" for the lodestar cross check). Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Id*.

Applying a lodestar analysis here would penalize Class Counsel for acting responsibly on behalf of the Class and obtaining a favorable outcome relatively early. In *Beckman*, the court noted that a relatively low lodestar amount (the fee award was about 6.3 times the lodestar) "should not result in penalizing plaintiffs' counsel for achieving an early settlement, particular[ly] where, as here, the settlement amount is substantial." 293 F.R.D. at 482.

Courts then consider whether a multiplier is warranted based on factors such as: "(i) the contingent nature of the expected compensation for services rendered; (ii) the consequent risk of non-payment viewed as of the time of filing the suit; (iii) the quality of representation; and (iv) the results achieved." *Parker v. Jekyll & Hyde Entm't Holdings*, LLC, No. 08 Civ. 7670 (BSJ)(JCF), 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010). All of these factors weigh in favor of granting Class Counsel's fee request.

With respect to the first two factors, Class Counsel spent approximately 385 hours litigating and settling this matter. Schaffer Decl. ¶ 54.  The hours worked by Class Counsel result in a lodestar of approximately 6.4. *Id.* ¶ 40.  Moreover, "[b]ecause class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Beckman*, 293 F.R.D. at 482 (internal quotation marks and citations omitted).  The multiplier that Class Counsel seeks will diminish over time as Class Counsel spends additional time working on this case, including preparing for and attending the final fairness hearing, answering Class Member questions, and answering questions from the Claims Administrator. Schaffer Decl. ¶ 54; *see* Nos. 07 Civ. 8623 (PAC) *et al.*, 2010 WL 1948198, at *9 (S.D.N.Y. May 11, 2010) (holding that the fee request was reasonable as it would compensate class counsel not only for time and effort expended, but also "for time that they will be required to spend administering the settlement going forward.").

Class Counsel's request for one-third of the Fund (approximately 6.4 times their "lodestar") is reasonable, particularly in light of the excellent result achieved for the Class. Schaffer Decl. ¶ 40.  "Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman*, 293 F.R.D. at 481; *see, e.g.*, *Vizcaino*, 290 F.3d at 1052-54 (listing nationwide class action settlements where multiplier ranged up to 8.5 times); *New Eng. Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05 Civ. 11148 (PBS), 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding multiplier of 8.3); *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *11 (granting attorneys' fees of approximately 7.6 times the lodestar stating that the class counsel should not be penalized "for

achieving an early settlement"); *In re Rite Aid Sec. Litig.*, 362 F. Supp. 2d 587, 589-90 (E.D. Pa.

2005) (awarding multiplier of seven times); *Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, 783

(9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have

allowed"); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520 (JLC), 2012 WL

651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting attorneys' fees equal to 6.8 times lodestar);

*Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531 (FM), 2014 WL 4816134, at *10 (S.D.N.Y. Sept.

23, 2014) (multiplier of 5.1 "falls within the range granted by courts"); *Puglisi v. TD Bank, N.A.*,

No. 13 Civ. 637 (GRB), 2015 WL 4608655 (E.D.N.Y. July 30, 2015) (awarding a multiplier of

4.86); *Flynn v. N.Y. Dolls Gentlemen's Club*, No. 13 Civ. 6530 (PKC)(RLE), 2015 U.S. Dist.

LEXIS 82772 (granting attorneys' fees with a multiplier of 4.5 in a claims made settlement); *In

re Telik, Inc.*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar multiples of over 4 are

routinely awarded by courts"); *see also In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262

(RWS), 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the

lower end of the range of multipliers awarded by courts within the Second Circuit").  Class

Counsel's request for $916,666.67 is thus well within the range of reasonableness.  With respect

to the third and fourth factors, as described herein, Class Counsel believes that its performance

was very good and the result it achieved for the Class was excellent.

    **D.**   **Class Counsel Is Entitled To Reimbursement Of Their Litigation
Expenses.**

Pursuant to the Settlement Agreement and Class Notice, Class Counsel seeks

reimbursement of $1,661.57 in litigation costs and expenses to be paid from the fund. Schaffer

Decl. ¶ 64.  "Courts typically allow counsel to recover their reasonable out-of-pocket expenses."

*Sukhnandan*, 2014 WL 3778173, at *15 (citing *In re Indep. Energy Holdings PLC Sec. Litig.*,

302 F. Supp. 2d 180, 183 n. 3 (S.D.N.Y. 2003)).  Given that Class Counsel's unreimbursed

expenses were incidental and necessary to the representation of the Class, they should be approved. Schaffer Decl. ¶ 64.

## IV.    A SERVICE AWARD SHOULD BE AWARDED TO PLAINTIFF

Pursuant to the Settlement Agreement, and subject to Court approval, a service award of $10,000.00 will be awarded to the named Plaintiff, Pamela Bravo, in addition to her individualized award under the allocation formula, in recognition of the services she rendered on behalf of the Class. **Ex. A**, Settlement Agreement ¶ 3.4.  This award is reasonable given the significant contributions the named Plaintiff has made to advance the prosecution and resolution of the lawsuit.  Moreover, the Class Notice informed Class Members that the above service award would be paid to the named Plaintiff, and no Class Member objected to this award. Schaffer Decl. ¶¶ 36.

"Courts acknowledge that plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny, and that '[service] awards are particularly appropriate in the employment context' where 'the plaintiff is often a former or current employee of the defendant, and thus ... he has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers.'" *Tiro*, 2013 WL 4830949, at *10; *Anjost*, 2014 WL 321831, at *10 ("Service awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take."); *Sukhnandan*, 2014 WL 3778173, at *16 ("It is important to compensate plaintiffs for the time they spend and the risks they take."); *see also Sewell*, 2012 WL 1320124, at *14 ("Plaintiffs litigating cases in an employment context face the risk of subjecting themselves to adverse actions by their employer … [and] being blacklisted as 'problem' employees.").  Accordingly, "[s]ervice awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risk incurred by becoming and continuing as a litigant, and any

other burdens sustained by the plaintiffs." *Anjost*, 2014 WL 321831, at *10 (citation and internal quotation marks omitted); *Tiro*, 2013 WL 4830949, at *11.

Here, the services provided by the named Plaintiff were instrumental to the initiation and prosecution of this action, and she expended considerable time and effort to assist Class Counsel with this case.  Her services included, but were not limited to: informing counsel of the facts initially and as the case progressed; providing counsel with relevant documents in her possession; reviewing Defendants' document production; assisting counsel to prepare for the settlement conference and settlement discussions; attending the settlement conference; and reviewing and commenting on the terms of the settlement. Schaffer Decl. ¶ 32.  Due to Plaintiff Bravo's efforts, 22 Opt-Ins joined the case without notice ever being issued. *Id.* ¶ 33.  The named Plaintiff also undertook a significant risk that she would be retaliated against by Defendants and/or "black balled" in the industry for the sake of the Class. *Id.* ¶ 35.  Internet searches can adversely affect her ability to obtain employment in the future.  Furthermore, before Defendants answered, Defense Counsel reached out to F&S regarding an individual settlement for Plaintiff only.  Plaintiff communicated to F&S that she was not interested, as she wanted the case to resolve for all similar employees. *Id.* ¶ 34; *see Matheson*, 2011 WL 6268216, at *9 (granting a service award of $45,000.00 to the class representative for his "active involvement in the prosecution of the case" and for "reject[ing] individual settlement offers … in order to obtain a recovery for other workers").  Accordingly, the Court should grant the requested service award based on the significant risk and work that Plaintiff undertook on behalf of the Class, as Plaintiff's actions exemplify the very reason service fees are awarded. *See Sukhnandan*, 2014 WL 3778173, at *16 (approving $10,000 service awards to four plaintiffs based on their time spent and risks taken in bringing, litigating and settling the lawsuit); *Tiro*, 2013 WL 4830949, at

*11 (finding $10,000 service awards to five Plaintiffs to be reasonable given the significant contributions the plaintiffs "made to advance the prosecution and resolution of the lawsuit" and that "no Class Member ha[d] objected to these awards.").

Moreover, the requested service award of $10,000 is reasonable and well within the range awarded by Courts in similar matters. *See, e.g., Anjost*, 2014 WL 321831, at *10 (approving service awards of $25,000 each to five named plaintiffs and citing cases where service awards of $10,000 to $45,000 were approved in wage and hour class action settlements).

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant final certification of the Rule 23 Class, approve as fair and adequate the class settlement as set forth in the Settlement Agreement, the FLSA settlement, the service award, and attorneys' fees and costs, and enter the proposed Final Order.

Dated: New York, New York
      January 12, 2016

Respectfully submitted,

/s/ Brian S. Schaffer
Brian S. Schaffer

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Nicholas P. Melito
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

*Attorneys for Plaintiff and*
*the Class*

- 29 -